IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-00777-RBJ

HOMETOWN COMMUNITY ASSOCIATION, INC.,

    Plaintiff,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Defendant.

---

ORDER ON MOTION TO DISMISS OR ALTERNATIVELY TO STRIKE

---

    This matter is before the Court on defendant Philadelphia Indemnity Insurance Company's motion to dismiss plaintiff Hometown Community Association, Inc.'s complaint and amended complaint, ECF Nos. 2, 32. Alternatively, Philadelphia moves to strike various paragraphs in the amended complaint. For the reasons stated below, Hometown's motion to dismiss or alternatively to strike is GRANTED in part and DENIED in part. The Court holds that payment of the appraisal award mooted the breach of contract claim but did not necessarily moot the bad faith claims.

## I. FACTS

    Hometown is a residential townhome association in Arvada, Colorado that was insured by defendant Philadelphia. ECF No. 31 at 2. On July 7, 2014 a hailstorm damaged Hometown's property. *Id.* This lawsuit stems from a subsequent disagreement between Hometown and Philadelphia over the insurance coverage for the damage Hometown sustained.

A.   **The Insurance Policy.**

At the time of the hailstorm, Hometown maintained a commercial property insurance policy with Philadelphia. The policy provided that Philadelphia would pay for physical loss to covered property as a result of covered causes of loss. ECF No. 2-1 at 103. Additionally, the policy contained an appraisal clause, which stated:

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of **"loss"**, either may make written demand for an appraisal of the **"loss"**. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss"**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*Id.* at 117 (emphasis in original).

B.   **Events Following the Storm.**

On March 28, 2015, eight months after the storm, Hometown submitted a claim to Philadelphia for the damage caused by the storm. ECF No. 31 at 2. On April 1, 2015, four days after filing its initial claim, Hometown contracted for painting on townhomes and flower boxes that had been damaged in the storm. *Id.* On May 8, 2015 Philadelphia acknowledged coverage for Hometown's March 28, 2015 claim. *Id.* However, on May 14, 2015 Philadelphia's adjuster Mr. Tom Bonnot denied Hometown's April 1st claim for painting and its claim for damage to windows, claiming that Hometown was responsible for these repairs. *Id.*

On May 21, 2015 Mr. Bonnot assessed the damage to Hometown's property, employing for this purpose Unified Building Sciences, Inc. ("UBS"). *Id.* at 3. Philadelphia also solicited bids from three contractors, including BluSky Restoration Contractors, LLC, to determine the cost of the required repairs. *Id.* Around the same time, Hometown employed HomeGuard Restoration to inspect the damage. *Id.* Despite objections from Hometown, Philadelphia chose BluSky's bid as the basis of its claim payment. *Id.* On August 31, 2015 Philadelphia used BluSky's bid to issue an actual cash value claim of $152,096.49 (after applying Hometown's deductible) in satisfaction of Hometown's claim. *Id.*

On December 1, 2015 Mr. Bonnot revised the scope of repairs to include additional damages and painting, but this revised scope still excluded some repairs Hometown thought necessary. Mr. Bonnot passed these adjustments to UBS and BluSky for revised estimates. *Id.* On February 8, 2016 BluSky revised its proposal, and UBS revised its scope and cost report to account for these adjustments. *Id.* On February 15, 2016 HomeGuard submitted its own revised estimate of damages "in an attempt to reach an agreement with respect to the scope of the covered repairs." *Id.*

Mr. Bonnot informed Philadelphia on February 26, 2016 that BluSky's revised estimate now totaled $446,585.83. *Id.* This amount included an undisputed value of $95,872.81 above Philadelphia's previous payment. *Id.* at 3-4. However, Philadelphia did not make an additional payment of this amount at this time. *Id.* On March 25 and April 22, 2016 Mr. Bonnot reminded Philadelphia of the remaining unpaid $95,872.01, but it was not paid. *Id.*

Meanwhile, on March 3, 2016 Hometown had invoked the insurance policy's appraisal clause by issuing a written demand for an appraisal of the loss. *Id.* The parties each appointed an appraiser, but on May 3, 2016 Philadelphia's appraiser informed Hometown's appraiser that

3

he would not review the file until the parties had appointed an independent umpire. *Id.* He eventually did look at the matter, but the two appraisers were unable to agree on the cost of repair. *Id.* at 5. Philadelphia's appraiser would not discuss the appointment of an impartial umpire with Hometown's appraiser, insisting instead that the parties should obtain a court-appointed umpire. *Id.* Accordingly, Hometown filed a petition for appointment of an umpire in Jefferson County District Court. *Id.* On August 30, 2016 Hometown removed the appointment action to the United States District Court for the District of Colorado on diversity grounds. *Id.* After a magistrate judge expressed skepticism about the federal court's jurisdiction over the case, the parties stipulated to remand the matter to state court on October 18, 2016. *Id.* The court selected an umpire on November 22, 2016. *Id.* at 6.

On January 31, 2017, now 11 months after Mr. Bonnot had informed Philadelphia of his increased damages figure, the court-appointed umpire issued an appraisal award that provided a total actual cash value of $515,580.43, along with a depreciation figure of $32,909.39. *Id.* Three days later, on February 3, 2017 Philadelphia issued a check for $186,429.30, reflecting the award's actual cash value less Philadelphia's previous payment and Hometown's deductible. Philadelphia has not yet paid the depreciation amount of $32,909.39 despite having inspected the property and confirmed that the repair work has been completed. *Id.*

    C.    **Procedural History.**

Hometown filed this suit in the Jefferson County District Court on March 6, 2017. Philadelphia removed the case to the United States District Court for the District of Colorado on March 28, 2017. ECF No. 1 at 2. On the same day Philadelphia moved this Court to dismiss the case, or alternatively, to strike all paragraphs alleging either litigation or appraisal conduct as a basis for a bad faith claim. ECF No. 2. The initial motion to dismiss was fully briefed (*see* ECF

Nos. 2, 14, 15) when Hometown amended its complaint on October 10, 2017. ECF No. 31. Because the amended complaint was largely similar to the original complaint, I instructed the parties to file short supplements incorporating their prior briefing should Philadelphia move to dismiss the amended complaint. ECF No. 30. Accordingly, Philadelphia filed its supplement to the original motion to dismiss on October 31, 2017, and Hometown filed its supplemental response on November 9, 2017. ECF Nos. 32, 34. Philadelphia's alternative motion to strike was expanded to include all paragraphs relating to depreciation payments. ECF No. 32 at 4-7.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

According to Rule 12(b)(6), the Court may only consider facts alleged within the complaint. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). "Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant

responded by supplying its own extrinsic evidence." *MacKinney v. Allstate Fire and Cas. Ins. Co.*, 16-CV-01447-NYW, 2016 WL 7034977, at *3–4 (D. Colo. Dec. 1, 2016). However, the Court may consider documents referred to in the complaint that are central to a plaintiff's claim without converting the Rule 12(b)(6) motion into a motion for summary judgment so long as the parties do not dispute the documents' authenticity. *Id.*

With respect to motions to strike, Rule 12(f) provides that a district court may "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of this rule is "to conserve time and resources by avoiding litigation of issues which will not affect the outcome of the case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997). Motions to strike pursuant to Rule 12(f) are "a generally-disfavored, drastic remedy." *Id.*

### III. ANALYSIS

Hometown's amended complaint asserts three claims for relief: breach of contract, unreasonable delay and denial of payment of benefits in violation of C.R.S. §§ 10-3-1115 and 10-3-1116, and common law bad faith. ECF No. 31 at 7–10. Philadelphia has moved to dismiss the complaint in its entirety, or alternatively to strike various allegations. ECF No. 32. I will address each of Philadelphia's arguments in turn.

A. **Hometown's Breach of Contract Claim.**

Under Colorado law, a plaintiff must establish the following elements to prove a breach of contract claim: "(1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff." *Wilson v. Humana Health Plan, Inc.*, No. 14-CV-03259-MEH, 2015 WL 849210, at *2 (D. Colo. Feb. 25, 2015) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.

1992)). In this case the parties' dispute concerns the third element: whether Philadelphia failed to perform its obligation under the contract.

Hometown alleges that Philadelphia breached the insurance policy before Hometown invoked the appraisal process.[1] ECF No. 14 at 6. In particular, Hometown alleges that Philadelphia delayed and denied Hometown's claim; "hired representatives that improperly investigated and/or adjusted the Association's claim in an attempt to avoid paying benefits owed;" and failed to "conduct a reasonable investigation," "apprise [sic] the total loss," "timely assess the loss and damages," and "pay covered benefits." ECF No. 31 at 7. In its motion to dismiss, Philadelphia argues that Hometown's breach of contract claim fails as a matter of law because Philadelphia paid the amount of loss determined by the appraisal process. ECF No. 2 at 1; *see also* ECF No. 32 at 2. According to Philadelphia, Hometown is therefore precluded from bringing *any* breach of contract suit relating to Philadelphia's obligation under the insurance policy. *Id.* at 7. In its response, Hometown contends that the appraisal process does not shield Philadelphia from liability for its pre-appraisal breaches of contract, which, Hometown argues, "forced Plaintiff to invoke the appraisal process in the first instance." ECF No. 14 at 6.

Because Hometown has failed to sufficiently support its breach of contract claim, this claim must be dismissed. As an initial matter, however, Philadelphia is incorrect in contending

---

[1] Hometown's amended complaint added an allegation about Philadelphia's failure to pay depreciation after the appraisal award. In theory that could support a breach of contract claim. But the dispute is not whether the depreciation is due but on the nature of proof needed to establish that the repairs have been made. Philadelphia apparently wants to see receipts from the contractors. Hometown apparently believes that Philadelphia knows that the repairs have been made but is unreasonably holding out for documentary proof. This strikes me as a dispute that could and should have been quickly resolved. Regardless, Hometown appears to rely on this allegation to support its bad faith claims, not its contract claim. *See, e.g.*, ECF No. 35 at 5 ("Hometown has pleaded sufficient factual allegations to state claims for relief for both common law bad faith and under C.R.S. §§ 10-3-1115 and 1116 due to unreasonable denial or delay of payment of depreciation awarded by the umpire."). As such, I am assuming Hometown has not altered the scope of its breach of contract claim to include this allegation, and that in any event, any contractual basis for the claim would disappear once proof of the repairs has been submitted and the depreciation is paid.

that appraisal awards necessarily preclude any further breach of contract claims. Appraisal awards are binding as to items within the scope of the appraisal but not as to items outside that scope. *Concept Restaurants v. Travelers Indem. Co. et al.*, No. 16-CV-00450-DME-NYW, 2016 WL 8737773, at *2–3 (D. Colo. Dec. 2, 2016).

However, Hometown's argument with respect to Philadelphia's pre-appraisal conduct is essentially that Philadelphia was unreasonable in its response to Hometown's claim, thus forcing Hometown into the appraisal process. ECF No. 14 at 6; *see also* ECF No. 31 at 7 (alleging that Philadelphia engaged in "denial and delay" of Hometown's claim, and failed to "conduct a reasonable investigation" or "timely assess the loss and damages."). Hometown alleges all the same facts to support its bad faith claims, as discussed below, but fails to allege any independent facts to support this breach of contract claim.

Moreover, Hometown's citation to *Wilson* fails to support its claim. In *Wilson* the insurer denied coverage of a medical claim on a certain date, and later reversed its decision after engaging in an internal appeals process. 2015 WL 849210, at *1. In that case, the insured was entitled to bring a breach of contract claim for the insurer's initial denial of coverage. *Id.* at *3–4. However, unlike in *Wilson*, in which the defendant wrongfully denied coverage outright, Philadelphia accepted coverage of Hometown's losses almost immediately after receiving Hometown's claim, thereby honoring its contractual obligation. *See id.* at *3 (noting that if the *Wilson* plaintiff had filed a lawsuit on the date that he was denied coverage, "there is no reason why a claim for breach could not have proceeded."). Despite Hometown's delay in notifying Philadelphia of its claim, the adjuster worked with UBS and BluSky to assess the scope of the damage and the cost of the repairs, and it paid Hometown promptly. Though Hometown may have disagreed with Philadelphia's scope of repairs or its initial actual cash value amount, such a

8

disagreement is contemplated in the insurance policy, and the appraisal process exists to address just such disagreements. *See* ECF No. 2-1 at 117. Consequently, Philadelphia's motion to dismiss the breach of contract claim is GRANTED.

      **B.**      **Hometown's Statutory and Bad Faith Claims.**

Hometown's final two claims for violation of C.R.S. §§ 10-3-1115 and 1116 and for common law bad faith rely on similar but distinct standards, as described below. However, Hometown has relied on the same set of facts to make both claims, and the parties' briefing on the motion to dismiss treats these two claims as essentially synonymous. *See, e.g.*, ECF No. 34 at 3 ("Defendant's entire course of conduct, both before and after the appraisal demand, supports Hometown's claims under common law bad faith and C.R.S. §§ 10-3-1115 and 1116."); *see also* ECF No. 2 at 9–18; No. 14 at 6–11. As such, after describing the requirements for each claim, I will resolve these claims together.

      *i.*      *Violations of C.R.S. §§ 10-3-1115 and 10-3-1116.*

Hometown alleges that Philadelphia violated Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116. Section 10-3-1115 prohibits the unreasonable delay or denial of a claim for benefits owed to a first-party insurance claimant, which is defined as an individual, association, or other entity asserting an entitlement to insurance benefits. An insurer's delay or denial is unreasonable if the insurer lacks a reasonable basis for its delay or denial. C.R.S. § 10-3-1115. The remedies for violating C.R.S. § 10-3-1115 are provided in section 10-3-1116, which states that a claimant whose claim "has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefits." Courts have referred to claims under these sections as claims for "statutory bad-faith denial of benefits." *Concept Restaurants*, 2016 WL 8737773, at *2.

9

Hometown alleges that Philadelphia violated these statutory provisions because it "lacked a reasonable basis from which to delay or deny covered benefits," and thereby deprived Hometown of covered benefits. ECF No. 31 at 8. In particular, Hometown argues in support of its statutory claim that:

> 64. Defendant refused to pay for the damaged property, minimized the amount of the loss and damages due to inaccurate scope of repairs, estimates, appraisals, improperly investigated the amount of the loss and damages, continuously underestimated the scope of repair, loss amount, and damages, failed to pay undisputed amounts, and issued a minimum [Actual Cash Value] forcing the Association to invoke the appraisal provision of the Policy and eventually file a petition for an impartial umpire, all of which caused significant delay in payment of the claim.
>
> 65. Defendant, through its agent appraiser, unreasonably delayed resolution of the appraisal process by refusing to review relevant materials before an umpire was appointed, by delaying review of relevant materials, and by not cooperating in the selection of an umpire.
>
> 66. Defendants further delayed resolution of this dispute by improperly removing the Appraisal Action to Federal Court without a legal or factual basis to do so.
>
> 67. Defendant delayed and denied payment of covered benefits, including but not limited to window repairs, without a reasonable basis.
>
> 68. Defendant has continued to deny payment of the undisputed depreciation amount, despite acknowledging that the repair work has been completed.

*Id.* As these allegations indicate, Hometown's statutory claim essentially boils down to the contentions that Philadelphia delayed and denied payment for invalid reasons; delayed the appraisal process by requiring that an umpire be appointed and then removing the appraisal appointment action to federal court; and has improperly continued to deny payment of the depreciation amount after it was determined in the appraisal process. *Id.*

      ii.     *Common Law Bad Faith*.

An insurance contract creates a "quasi-fiduciary" relationship between insurer and insured, imposing an implied covenant of good faith upon the insurer. *Am. Family Mut. Ins. Co.*

*v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "[A]n insurer acts in bad faith in denying or delaying the processing of a valid first-party claim when the insurer's conduct is unreasonable and the insurer knows or recklessly disregards the fact that its conduct is unreasonable." *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988). To prove that an insurer breached its duty of good faith, the insured "must prove both that the insurer acted 'unreasonably under the circumstances' and that 'the insurer either knowingly or recklessly disregarded the validity of the insured's claim.'" *Allen*, 102 P.3d at 342 (quoting *Goodson v. Am. Std. Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004)). In this regard, the common law standard is theoretically distinct from the statutory standard, which does not require that the insurer knowingly or recklessly have disregarded the validity of the insured's claim. In the context of a common law bad faith claim, "[t]he reasonableness of an insurer's conduct is measured objectively based on industry standards." *Id.* at 343. "A common law tort claim of bad faith includes the entire course of the insurer's conduct until the time of trial." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) (citing *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997)).

Hometown's common law bad faith claim relies on generally the same factual allegations as its statutory claim to contend that Philadelphia breached its duty to act reasonably and in good faith in handling the payment of Hometown's claim. ECF No. 31 at 9.

  *iii.*  <u>*Philadelphia's Argument for Dismissal*</u>.

Philadelphia argues that as a matter of law it cannot be held liable for Hometown's statutory or common law bad faith claims because it participated in the appraisal process and paid the appraisal award. Alternatively, it argues that even if it could be found liable for bad faith as a matter of law, no bad faith conduct has been alleged here since appraisal and litigation conduct cannot form the basis of a bad faith claim. Last, Philadelphia notes that even if appraisal

11

and litigation conduct could be considered, its conduct does not support a bad faith claim because it was objectively reasonable. ECF No. 2 at 1–2. As explained below, I disagree with Philadelphia's arguments. Because Hometown has pled plausible statutory and common law bad faith claims, the motion to dismiss must be DENIED with respect to these claims.

        *a.*      <u>*Participation in the Appraisal Process Does Not Preclude Bad Faith Liability.*</u>

Philadelphia's first argument is that its participation in the appraisal process precludes bad faith claims against it. Philadelphia again cites *Concept Restaurants* for the proposition that when an insured invokes the appraisal provision, the insured is "estopped by the appraisal award" and "*precluded from any suit.*" ECF No. 2 at 9 (emphasis in original). However, Philadelphia overstates the *Concept Restaurants* holding in this context. As with the breach of contract claim, the bad faith claim in *Concept Restaurants* was barred not because the appraisal process had been invoked, but because the bad faith claim was related to expenses that were within the scope of the appraisal—indeed, the expenses had been actually considered during the appraisal. 2016 WL 8737773, at *4. The Court noted that "matters outside the scope of the appraisal" are not precluded from further litigation. *Id.* at *2–3. The insured was thus barred from bad faith litigation about the payment of those expenses.

Here, Hometown alleges a course of bad faith conduct occurring before, during, and after the appraisal process. As such, though I need not determine at this phase which, if any, of Hometown's specific allegations fall within the scope of the appraisal, it is sufficient to find that the act of participating in the appraisal process does not, as a matter of law, preclude the bad faith claims raised in this case.

Additionally, I am not convinced by Philadelphia's citation to a series of cases from the Fifth Circuit in support of its argument. *See, e.g.*, *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 608–09 (S.D. Tex. 2015) (noting that "extra-contractual claims," including common law bad faith claims, are nullified when the related contractual claims are resolved through appraisal); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 369 (5th Cir. 2012) (noting that an insured will not prevail on a bad faith claim without first establishing a breach of contract); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, Civ. A. No. H-09-3828, 2011 WL 3236192, at *8 (S.D. Tex. July 27, 2011) (finding that invocation of the appraisal process precludes liability for bad faith claims). These cases are not binding here. Each of them applies Texas law, which is not necessarily persuasive in an insurance coverage dispute under Colorado law. While an appraisal might be (and I believe is) determinative with respect to the amount of loss and issues of causation, there may be issues outside the scope of the appraisal that need to be resolved by courts. *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-CV-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015). As a result, contrary to Philadelphia's argument, the act of engaging in the appraisal process does not per se preclude bad faith claims.

    b.  <u>*Appraisal and Litigation Conduct Can Constitute Bad Faith Conduct*</u>.

Philadelphia's argument in the alternative is that even if it could be found liable for bad faith despite participating in the appraisal process, no bad faith conduct has been alleged here. To this end, Philadelphia argues that conduct during an appraisal or litigation cannot be considered in furtherance of a bad faith claim. I disagree.

Philadelphia cites *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988), arguing that it forbids consideration of appraisal conduct to support a bad faith claim. *See*

13

ECF No. 2 at 11.  However, this case provides only that a request for appraisal suspends the obligation to *negotiate* as a reflection of good faith, but that the "insurer's duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship." *Bucholtz*, 773 P.2d at 592–93.

Philadelphia's citation of *Toy v. Am. Family Mut. Ins. Co.*, No. 12-CV-01683-PAB-MJW, 2014 WL 485922, at *4 (D. Colo. Feb. 6, 2014) is similarly inapt.  Though Philadelphia cites *Toy* for the notion that conduct during arbitration or appraisal is irrelevant to bad faith claims, that case in fact provides that "[a]n insurer's conduct after the commencement of adversarial proceedings can be admissible and relevant to an insurer's duty of good faith, provided the proponent of such evidence makes a sufficient showing of relevance." *Toy*, 2014 WL 485922, at *2 (citing *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).  In *Toy*, the Court ultimately denied the plaintiff's motion to introduce evidence of the defendant's conduct during the pendency of the parties' arbitration, finding that in light of the potential for jury confusion and unfair prejudice, the plaintiff "had failed to satisfy his burden of showing that defendants' conduct during the pendency of arbitration is relevant and admissible." *Id.* at *5.  Despite the outcome in the case, there is no indication from *Toy* that conduct during an appraisal is deemed *per se* irrelevant for purposes of showing bad faith.

*Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-CV-02063-CMA-KLM, 2014 WL 1464400, at *5 (D. Colo. Apr. 14, 2014) similarly fails to support Philadelphia's argument.  The Court reiterated the holdings of *Bucholtz* and *Toy*, emphasizing that while the good faith duty to negotiate is suspended by an appraisal demand, evidence of an insurer's conduct after the commencement of such a proceeding may still be relevant to its duty of good faith so long as the proponent of that evidence demonstrates its relevance.  *Id.* at *5.

14

Along similar lines, Philadelphia argues that its removal of the parties' appraisal action from state to federal court cannot constitute bad faith conduct since the conduct occurred during litigation. ECF No. 2 at 13. Philadelphia cites *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 814 (Colo. App. 2006), in which an insurer's litigation conduct was found inadmissible in an action for bad faith. However, as *Tae Hyung Lim* clarifies, the *Parsons* court did not prohibit the use of evidence of litigation conduct to prove bad faith but instead established that a plaintiff seeking to introduce such evidence must make a showing of "extraordinary facts." *Tae Hyung Lim*, 2014 WL 1464400, at *6. Indeed, *Tae Hyung Lim* notes that such evidence of litigation conduct is admissible so long as it passes the Rule 403 balancing test from the Federal Rules of Evidence. *Id.*

Similarly in *Rabin v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012), the Court emphasized that while an insurer's "derivative duty to negotiate, settle, or pay a claim" is suspended when an insured files a lawsuit, the insurer's "overarching duty of good faith and fair dealing persists through the course of litigation." The defendant in that case argued that "because its duty to negotiate was suspended when litigation was filed, evidence of its conduct thereafter is inadmissible," but the *Rabin* Court noted that "Colorado case law . . . weighs against" that position. *Id.* at 1115. As a result, the plaintiff was allowed to introduce evidence of the defendant's conduct after litigation was filed "in an attempt to demonstrate a pattern or course of conduct . . . constituting bad faith or a section 1116 violation," subject to the Federal Rules of Evidence. *Id.* at 1116. The Court also noted that where bad faith and section 1116 claims were based on an entire course of conduct, rather than just on litigation conduct, the plaintiff could prevail on those claims even though the duty to negotiate in good faith was suspended by the commencement of adversarial proceedings. *Id.* at 1114.

15

In this case, as in *Rabin*, Hometown's bad faith claims rely on Philadelphia's entire course of conduct. As such, Hometown may rely in part on Philadelphia's litigation conduct to support its bad faith claims, though its evidence of this conduct will be required to satisfy the rules of evidence.[2]

        c.         *Hometown Has Plausibly Pled Bad Faith Conduct.*

Finally, I am not convinced by Philadelphia's last argument in this section that even if its appraisal and litigation conduct could be considered in furtherance of its bad faith claim, no bad faith conduct occurred before, during, or after the appraisal proceedings.

Philadelphia argues that Hometown's allegations about Philadelphia's pre-appraisal conduct show no more than a bona fide disagreement over the amount of loss, rather than bad faith or an unreasonable denial. ECF No. 2 at 17–20. However, given the course of conduct Hometown outlines, including Philadelphia's early refusal to cover certain damages and later reversal of that decision, it is plausible that Philadelphia delayed payment of these benefits unreasonably and/or with knowledge of the validity of Hometown's claim for these damages. Philadelphia also disputes Hometown's reliance on Philadelphia's failure to pay the February 2016 undisputed damages amount of $95,872.81 before Hometown invoked the appraisal process. Philadelphia argues that it was under no obligation to pay this amount because Hometown invoked the appraisal process only days after Philadelphia learned about this amount. ECF No. 32 at 4. This issue is inappropriate for the motion to dismiss stage, since it requires a factual determination of when Philadelphia found out about the undisputed amount and when it

---

[2] The evidentiary burden to admit evidence of litigation conduct is high (*see, e.g.*, *Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995) (citing *Fed. R. Evid.* 401, 403) ("[S]uch evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice.")), but Hometown is not at present subject to that burden. Instead, it is enough for now to note that Philadelphia's litigation conduct may be considered in support of Hometown's bad faith claim, though Hometown will need to validate its evidence at a later date.

was required under the policy to pay this amount.  Regardless, Hometown alleges an entire course of bad faith conduct, and the outcome on this particular allegation does not affect the plausibility of its bad faith claims.

With respect to Philadelphia's conduct during the appraisal (including its litigation conduct when it removed the umpire appointment proceeding to federal court) and thereafter, Philadelphia contends that each of its actions was objectively proper.  It cites *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012), in which the court noted that "it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" (quoting *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo. App. 2011).  However, that case also notes that "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury" that can be decided as a matter of law only under appropriate circumstances, such as "when there are no genuine issues of material fact." *Id.*[3]  At the motion to dismiss stage, where the inquiry is not whether there are genuine issues of material fact but instead whether the plaintiff has pled sufficient facts to plausibly state its claims, it is not for the Court to decide whether Philadelphia's conduct was reasonable as a matter of law or instead constituted bad faith.  I need only determine whether Hometown has provided sufficient facts to plausibly state its claims, and I am satisfied that it has.  Because it is plausible that Philadelphia's actions during the appraisal process, including the removal of the umpire appointment action, were delay tactics undertaken in bad faith, it would not be appropriate to dismiss this claim.

Finally, Philadelphia defends its action after the appraisal award—namely, denying payment of the depreciation award—as justified by the terms of the insurance contract.  ECF No.

---

[3] In *Nibert v. Geico Casualty Co.,* No. 16CA0322, 2017 WL 710504, at **2, 3 (Colo. App. Feb. 23, 2017), the court held that "Colorado law is clear that whether a claim is fairly debatable is not the sole inquiry in a reasonableness analysis," and that "the 'fairly debatable' issue is not relevant to a statutory delay claim pursuant to section 10-3-1116."

32 at 5–6. This apparently is based on Hometown's failure to submit receipts from the contractors who did the repair work. *See id.* at 5 n.1. But Hometown notes that the appraisal determined that $32,909.39 was owed, and that Philadelphia was aware that work had been completed. *See* ECF No. 34 at 5. That creates a fact dispute as to whether insistence on the actual receipts was reasonable.

### D. **Philadelphia's Motion to Strike.**

In the alternative, Philadelphia moves to strike "all paragraphs related to depreciation payments and all paragraphs alleging litigation or appraisal conduct as a basis of Plaintiff's bad faith claims, including paragraphs 30-45, 65-66, and 68." ECF No. 32 at 6. This motion is denied.

#### i. *Paragraphs Alleging Litigation or Appraisal Conduct.*

Paragraphs 30–44 and 65–66 of Hometown's amended complaint refer to the appraisal process and Philadelphia's alleged bad faith conduct during that process, including its removal of the umpire appointment process to federal court. Philadelphia moves to strike these paragraphs on the grounds that appraisal and litigation conduct "may not form the basis of a bad faith claim." ECF No. 2 at 18; ECF No. 32 at 6. However, as discussed above, Philadelphia misstates the law on this subject. Evidence of litigation and appraisal conduct *may* in fact be considered with respect to a bad faith claim so long as the proponent of that evidence proves its relevance. Thus, at this early stage in the proceedings it would be improper to strike these allegations. Instead, the admissibility of this evidence would be better disputed at a later stage with reference to the Federal Rules of Evidence.

### ii. *Paragraphs Related to Depreciation Payments.*

Paragraphs 45 and 68 of Hometown's amended complaint refer to Philadelphia's denial of "payment of the undisputed depreciation amount." ECF No. 31 at 8. However, Philadelphia does not explain why this allegation is "immaterial, impertinent, or scandalous" such that it should be stricken. Fed. R. Civ. P. 12(f). Instead, Philadelphia's argument focuses on the merits of this argument with reference to the applicable insurance policy language governing depreciation payments. ECF No. 32 at 4–6. Because this allegation is relevant to Hometown's general allegation of bad faith conduct, and because Philadelphia has not provided any reason this allegation is irrelevant, I will not strike this paragraph.

## ORDER

For the reasons stated above, defendant's motions to dismiss or in the alternative to strike [ECF Nos. 2, 32] are GRANTED with respect to the breach of contract claim, which is dismissed, but are otherwise DENIED.

DATED this 12th day of December, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge