IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00777-RBJ

HOMETOWN COMMUNITY ASSOCIATION, INC.,

    Plaintiff,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Defendant.

---

# ORDER ON MOTION TO RECONSIDER
# AND ON MOTION TO DISMISS COUNTERCLAIMS

---

This matter is before the Court on defendant's motion for reconsideration (ECF No. 39); and (2) plaintiff's motion to dismiss defendant's counterclaims (ECF No. 40). The motion for reconsideration is GRANTED in part and DENIED in part, and the motion to dismiss the counterclaims is DENIED.

## BACKGROUND

**A. Factual Background.**

This suit arises from Philadelphia's treatment of insurance claims for property damage that Hometown sustained in a July 7, 2014 hailstorm. Philadelphia acknowledged coverage for Hometown's insurance claim and issued an initial payment according to its valuation of the claim. However, the parties disagreed about the amount of damage and the scope and cost of repairs, so Hometown invoked an appraisal process provided in the insurance policy.

As will be discussed in more detail later in this order, the appraisal process required each party to select a competent and impartial appraiser, and because the appraisers could not agree,

1

an umpire was appointed to resolve the differences. Ultimately an appraisal award was issued setting the loss amount at $548,489.82, comprised of $540,089.82 for roofs and exteriors and $8,400 for windows and screens. ECF No. 31 at 6, ¶43. That figure, sometimes referred to as the replacement cost value, has two main components: "actual cash value" of the damaged property, payable whether or not the repairs are made, and depreciation, payable only after the repairs are completed. The actual cash value of the appraisal award was set at $515,580.43. The depreciation component was $32,909.39. *Id.*

Philadelphia paid the actual cash value amount, less its previous payment and Hometown's deductible. *Id.* at ¶44. The depreciation component has not been paid, and whether it is owed is one of the parties' remaining disputes.

### B. **Procedural History.**

Despite Philadelphia's payment of the appraisal award, Hometown sued Philadelphia in the Jefferson County District Court asserting breach of contract and two types of "bad faith" claims: unreasonable delay or denial of an insurance benefit contrary to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, and common law bad faith. Philadelphia removed the case and moved to dismiss. Plaintiff asserted additional facts in an amended complaint, mooting the motion to dismiss, but Philadelphia again moved to dismiss on the grounds that (1) its participation in the appraisal process and payment of the appraisal award extinguished plaintiffs' claims; (2) even if payment of the appraisal award did not preclude the bad faith claims, (a) conduct during the appraisal process, including litigation conduct, could not be considered as grounds for bad faith claims; (b) Philadelphia did not in any event act in bad faith during the appraisal process or in its litigation conduct during that process and (c) plaintiff did not allege pre-appraisal bad faith conduct. ECF No. 32.

On December 12, 2017 I granted Philadelphia's motion to dismiss in part, dismissing the contract claim but not the bad faith claims. I concluded that Philadelphia's participation in the appraisal did not necessarily preclude a bad faith claim, finding that Hometown had alleged a course of bad faith conduct occurring before, during and after the appraisal process, ECF No. 35 at 12-13; that conduct during the appraisal process, including litigation conduct, could constitute bad faith conduct, *id.* at 13-16; and that Hometown had plausibly alleged bad faith conduct sufficiently to withstand a Rule 12(b)(6) motion, *id.* at 16-18.

Following the Court's order on the motion to dismiss, Philadelphia filed an answer and counterclaim. ECF No. 38. In the counterclaim Philadelphia alleges that Hometown breached its contractual obligation to select a competent and impartial appraiser such that the appraisal award should be vacated, and damages should be awarded against Hometown in the amount of the appraisal award (Counts I and III). The counterclaim also seeks a declaration that Philadelphia owes nothing beyond the "actual cash value" of the repairs, i.e., no depreciation (Count II) and an award of damages based on fraud allegedly committed by Hometown and its appraiser (Count IV). In addition, Philadelphia moves the Court to reconsider its order on the motion to dismiss. ECF No. 39. Hometown has moved to dismiss the First, Third and Fourth Counts of Philadelphia's counterclaim. ECF No 40.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration. After judgment has entered in a case, such motions are "generally accepted and construed under Federal Rules of Civil Procedure 59(e) and 60(b)." *Montano v. Chao*, 07-CV-00735-EWN-KMT, 2008 WL 4427087, at *5 (D. Colo. Sept. 28, 2008). "On the other hand, where a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and

60(b) do not apply." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 06-CV-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010). "Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *Id.*

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.

*Lyons v. New Mexico Dep't of Corrections*, 12 F. App'x 772, 773 (10th Cir. 2001) (unpublished) (internal citation omitted). However, a motion to reconsider is not to be used to "reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding." *Jaffrey v. Portercare Adventist Health Sys.*, No. 15-CV-02297-NYW, *slip op.*, 2017 WL 3437986, at *2 (D. Colo. Aug. 10, 2017).

To survive a 12(b)(6) motion to dismiss, the counterclaim must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## APPRAISAL CLAUSE

Because the Court's analysis of the appraisal clause affects its ruling on both parties' pending motions, I will begin there. The clause provides that if the parties disagree on the value of the property or the amount of the loss, either party may demand an appraisal of the loss. *See* Property Coverage Form ¶E(2), ECF No. 2-1 at 117. Then,

> each party will select a *competent and impartial* appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

*Id.* (emphasis added).

The term "impartial" is not defined in the policy. One well-known dictionary defines "impartial" to mean "not partial or biased; treating or affecting all equally." Meriam-Webster, https://www.merriam-webster.com/dictionary/impartial. However, a decision of the Colorado Court of Appeals defines the term somewhat differently. In *Owners Ins. Co. v. Dakota Station II Condominium Association, Inc.*, 2017 WL 3184568 (Colo. App. 2017), *cert. granted,* 2018 WL 948601 (Colo. Feb. 20, 2018), the court held that an impartial appraiser must act "fairly, without bias, and in good faith," but that the appraiser is not forbidden from favoring one side more than the other, i.e., that the appraiser need not be impartial "in the sense that a judge or arbitrator (or the umpire under this policy) would be required to be impartial." *Id.* at *4.

## PENDING MOTIONS

### I. Philadelphia's Motion for Reconsideration [ECF No. 39].

Philadelphia contends that the Court erred (1) to the extent that it found that the appraiser's conduct could support a bad faith claim; (2) to the extent that it found that Philadelphia's removal of the appointment action to federal court could support a bad faith claim; and (3) by refusing to dismiss the amount of Hometown's bad faith claims that were determined and paid in appraisal. ECF No. 39 at 1–2.

#### A. Appraiser's Conduct as the Basis of a Bad Faith Claim.

Philadelphia argues that its appraiser's conduct cannot form the basis of a bad faith claim against Philadelphia. ECF No. 39 at 2. It cites Magistrate Judge Wang's opinion in *Church Mutual Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 4029589 (D. Colo. Sept. 13, 2017), which was issued "months after Philadelphia 's original motion was filed." *Id.*

In *Church Mutual*, an insured's appraiser and public adjuster were alleged to have been partial in an appraisal due to an improper and undisclosed business relationship between them. 2017 WL 4029589, at *2. The appraiser and public adjuster protested that since they were merely agents of the insured, the insurer's only recourse was to deny the appraisal award rather than to hold them independently liable for their conduct. *Id.* at *4. Judge Wang disagreed with the defendants' notion of agency. Whereas a public adjuster is employed by an insured and thus "is considered an agent of the insured," an impartial appraiser selected pursuant to an insurance policy is less clearly an agent of the insured. *Id.* She found a dearth of authority holding "that an appraiser, who is required to be 'impartial' under the Policy, would be appropriately considered an agent of the insured." *Id.* In general, appraisers "are not subject to the control of the parties," and are "not agents in law and ought not to be in practice." *Norwich Union Fire Ins. Soc., Ltd., of Norwich, England v. Cohn*, 68 F.2d 42, 44 (10th Cir. 1933). Thus, the "[f]ault of an appraiser is therefore not the fault of the party appointing him." *Id.* Judge Wang thus observed that the notion of agency is inconsistent with the insurance policy's requirement that an appraiser be impartial. *Church Mutual*, 2017 WL 4029589, at *4.

Hometown notes that Magistrate Judge Wang's Report and Recommendation is not binding precedent. ECF No. 42 at 8. I agree, but I also agree with Judge Wang's reasoning. It is fundamental to the appraisal clause that each party must select, in good faith, an appraiser who is competent and impartial. Thus, if the insurer selects an appraiser who is not competent or not impartial, then the appraisal process was not conducted as agreed, and any award determined by that appraiser and the umpire is subject to vacation. If the insurer knowingly or intentionally selected as its appraiser an individual who was not competent and impartial, then the insurer would be susceptible to a bad faith claim.

Here, however, Hometown has not alleged that the appraiser selected by Philadelphia, Grant Trusler, was not a competent and impartial appraiser. Rather, Hometown alleges that Mr. Trusler did some things that caused delays in the appraisal process, i.e., that he stated that he did not engage in discussions regarding the appointment of an impartial umpire; that he stated that he does not review the file until an umpire is in place; that he requested that Philadelphia go directly to a court for the appointment of an umpire; and that he left the country for three weeks without forewarning Hometown or its selected appraiser. ECF No. 31 at ¶¶30-35. Hometown asks the Court to impute those actions to Philadelphia on an agency theory, thereby supporting a claim that Philadelphia unreasonably delayed the processing of the claim. I am not persuaded.

Philadelphia's argument was not expressly raised in the initial motion to dismiss. However, I find it to be appropriate in this instance to exercise "the Court's plenary power to revisit and amend interlocutory orders as justice requires." *Sherman v. Klenke*, No. 11-CV-03091-PAB-CBS, 2014 WL 675417, at *1 (D. Colo. Feb. 20, 2014). It would not benefit the parties to defer resolution of this legal issue to resolution on a summary judgment motion. The Court concludes that the Amended Complaint does not state a claim of bad faith or unreasonable delay by Philadelphia on the basis of imputing Mr. Trusler's conduct to Philadelphia and, to that extent, the motion for reconsideration is GRANTED.

### B. Removal of the Umpire Appointment Action to Federal Court.

Philadelphia contends that the Court failed to address numerous cases establishing that it was proper for Philadelphia to remove the umpire appointment action to federal court. *Id.* at 2. The Court reviewed the cases to the extent it deemed it necessary, but the Court's position may be simply stated and is not dependent on extensive examination of case law. There is nothing inherently improper about removal of the appointment matter. That does not mean, however,

that evidence of the removal is necessarily inadmissible. If, for example, there is evidence that Philadelphia removed the case for the purpose of delay, that could support a bad faith claim.

In its amended complaint, ECF No. 31, plaintiff alleges, in pertinent part:

37. Despite the fact that [Hometown] did not seek any monetary relief in its petition, on August 30, 2016, Defendant improperly removed the Appointment Action to the United States District Court for the District of Colorado on alleged diversity grounds.

42. Although [Hometown] filed the Appointment Action on August 10, 2016, as a result of the Defendant's improper removal of that action to Federal Court, there was a delay of three months before the umpire was selected.

49. In forcing the Association to invoke the appraisal process and file for appointment of an impartial umpire, and then improperly removing the Appraisal Action to Federal Court, Defendant caused an additional and further unreasonable delay of payments for covered benefits under the Policy.

66. Defendants further delayed resolution of this dispute by improperly removing the Appraisal Action to Federal Court without a legal or factual basis to do so.

For purposes of a motion to dismiss the Court construes plaintiff's well-pleaded allegations of fact and inferences reasonably drawn from them in plaintiff's favor. Even so, I do not construe these allegations as asserting that Philadelphia removed the appointment matter for the <u>purpose</u> of delay. Rather, I construe them as asserting that the removal was improper because Hometown did not seek monetary relief, and the <u>effect</u> of the removal was to delay the process for three months.

I again conclude that it makes sense to address the issue now. If plaintiff develops facts that would enable it to allege in good faith that Philadelphia removed the case for the purpose of delay, then the Court would grant leave to amend the complaint accordingly. But I GRANT the motion for reconsideration and hold that, in its present form, the amended complaint does not allege facts that would permit the removal to serve as a basis for a bad faith claim.

8

### C. Bad Faith Claim Regarding Amounts Paid in Appraisal.

Even after reading the briefs it is not entirely clear what target Philadelphia is shooting at here. Notwithstanding the awkward wording of paragraph 80 of the amended complaint, plaintiff is not asserting any claim based on the amount of the appraisal award or the amount paid by Philadelphia pursuant to the appraisal award. The only payment issue I discern is plaintiff's allegation that Philadelphia has wrongfully withheld payment of the depreciation piece of the award ($32,909.39). The depreciation is also the subject of Count II of defendant's counterclaim. It involves a dispute of material fact, i.e., has plaintiff or its contractor performed the repairs that would justify payment of the withheld depreciation. To any extent the motion for reconsideration touches on that aspect of the payment or, more accurately, non-payment of the appraisal award, it is DENIED.

## II. Hometown's Motion to Dismiss Philadelphia's Counterclaim [ECF No. 40].

### A. The Counterclaim.

Philadelphia alleges that Hometown entered into a contract with HomeGuard Restoration whereunder HomeGuard agreed to perform certain work in exchange for the proceeds of Hometown's insurance claim against Philadelphia. ECF No. 40 at 27, ¶10. According to Philadelphia, plaintiff's appraiser, Mr. Rockers, generated no repair estimate on his own; rather, he relied exclusively on HomeGuard's estimate. *Id.* at ¶¶14-15. Philadelphia alleges that Hometown and its appraiser had a duty to disclose any facts likely to affect their interest in the outcome of the appraisal. *Id.* at 28, ¶¶18-19, 22. But neither of them disclosed HomeGuard's interest in the insurance proceeds to Philadelphia or the umpire, nor did HomeGuard. *Id.* at 21. The umpire relied on HomeGuard's estimate as the basis for his appraisal, unaware that

"HomeGuard knowingly and fraudulently misstated the cost of repairing the damage caused by the hail storm at issue by improperly inflating its repair estimate." *Id.* at 28-29, ¶¶23, 26.

In Counts I and III of the counterclaim Philadelphia alleges that Mr. Rockers was not a competent and impartial appraiser. Philadelphia asks the Court to vacate the appraisal award and to award damages including return of what it paid on the award. Count II concerns depreciation and is not the subject of the pending motion. In Count IV Philadelphia alleges that Hometown committed fraud by misrepresentation and concealment. It appears to seek the same remedies on this count as in Counts I and III.

### B. **Motion to Dismiss Counterclaims.**

Hometown moves to dismiss counts I, III, and IV of Philadelphia's counterclaim on the grounds that these counts are time-barred. Alternatively, even if they are not time-barred, Hometown contends that counts I and III should be dismissed for failure to plead sufficient facts to establish that Hometown's appraiser was not impartial, and the fourth count should be dismissed for failure to plead sufficient facts to establish that Hometown's contractor misrepresented the value of the claim or that this misrepresentation can be imputed to Hometown. *Id.* at 2.

1. Time Bar.

Hometown contends that Philadelphia's right to seek vacation of the appraisal award must be derived from the Colorado Uniform Arbitration Act (the "CUAA") because the insurance policy itself does not provide for vacation of an award. ECF No. 40 at 3–4. The CUAA provides that an action to vacate an arbitration award shall be filed within 91 days of receiving notice of the award unless "the movant alleges that the award was procured by corruption, fraud, or other undue means," in which case the motion to vacate shall be filed within

91 days after the reason for seeking to vacate the award is known or by exercise of reasonable care should have been known. C.R.S. § 13-22-223(2). Hometown argues that under the CUAA's time limits, Philadelphia's deadline to vacate the award was October 26, 2017 at the latest, assuming Philadelphia sought to vacate the award due to alleged corruption, fraud, or other undue means. *Id.* at 4–5. Because Philadelphia filed its counterclaim in January 2018, Hometown contends that Philadelphia's counterclaim is barred.

Philadelphia disputes the CUAA's relevance to appraisals, noting that by its terms, the CUAA applies only to agreements to arbitrate. ECF No. 41 at 4 (quoting C.R.S. § 13-22-203 ("[T]his part . . . shall govern *an agreement to arbitrate*.") (emphasis added); § 13-22-223 ("[T]he court shall vacate an award *made in the arbitration proceeding*.") (emphasis added). In *Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, 129 F. Supp. 3d 1150, 1151 (D. Colo. 2015), Judge Babcock concluded that the appraisal process set forth in the insurance policy, which was materially identical to the policy at issue in this case, was "not an arbitration under the CUAA." Judge Babcock cited the Tenth Circuit's decision in *Salt Lake Tribune Publishing Co. LLC v. Management Planning, Inc.*, 390 F.3d 684 (10th Cir. 2004). The court there explained that only a process in which a third party's assessment settled a dispute through to conclusion could be considered an arbitration. 390 F.3d at 689–90. Judge Babcock noted that because an appraisal like the one in this case requires two parties on the panel to agree, and because their agreement would still leave issues for the court to resolve, such an appraisal is not an arbitration. 129 F. Supp. 3d at 1153–54.

Similarly, in *Montview Boulevard Presbyterian Church v. Church Mutual Ins. Co.*, No. 14-CV-01635-MSK-KMT, 2016 WL 233380, at *2 (D. Colo. Jan. 20, 2016), Magistrate Judge Tafoya held that the insurance policy's appraisal process was not an arbitration subject to the

11

CUAA. That policy's appraisal process provision was materially identical to the provision in this case. *See* 2016 WL 233380, at *2. Judge Tafoya reviewed Judge Babcock's decision in *Summit Park* and Judge Matsch's decision in *KCOM, Inc. v. Employers Mutual Casualty Insurance Co.*, No. 14-CV-01854-RMB (D. Colo. June 16, 2015), and she concluded that "[t]he weight of authority in this District has now strengthened, with two District Court judges extending the Tenth Circuit's conclusion as to the Federal Arbitration Act to Colorado's Arbitration Act, thus favoring an interpretation that the appraisal process in this case, like in *Summit Park Townhome* and *KCOM*, is not an arbitration proceeding subject to the CUAA." *Id.* at *3.

Hometown cites the Colorado Court of Appeals' decision in *Dakota* where the defendant argued that the plaintiff's motion to vacate was not timely filed within the CUAA's timeframe because the filing was captioned as a petition rather than as a motion. 2017 WL 3184568, at *1. Neither party disputed that the CUAA's time limit applied, and the court found that the motion had been timely filed regardless of its caption. *Id.* However, with respect to whether the appraiser was impartial as required under the CUAA's requirements, the court found the parties had not specifically stipulated to require the application of the CUAA's standards. *Id.* at *2. As a result, the court found the CUAA's requirements for impartial arbitrators did not apply. *Id.* I am not convinced by Hometown's argument that *Dakota* requires that the CUAA be applied to appraisals. Rather, I interpret the case as providing that where the parties stipulate or agree that the CUAA applies, courts may apply it.

I conclude that the CUAA does not apply to the appraisal in this case, and therefore, that the CUAA's time limit does not act as a bar against Philadelphia's counterclaim.[1]

---

[1] Because the CUAA does not apply to the appraisal at issue, I need not address Philadelphia's argument that the CUAA deadlines, were they to apply, should apply only to Count I. *See* ECF No. 41 at 6 n.1.

2. <u>The Court's Authority to Vacate an Appraisal Award as a Matter of Contract Interpretation</u>.

In *Colorado Hospital Services, Inc. v. Owners Ins. Co.*, No. 14-CV-001859-RBJ, 2015 WL 4245821 (D. Colo. July 14, 2015), I vacated an appraisal award in a similar case. Though Hometown concedes that the Court "did not specifically cite the legal basis" for vacating the appraisal award, Hometown nonetheless argues that the case supports its argument because "the only legal basis on which the carrier relied for its argument was the CUAA." ECF No. 43 at 3. Notwithstanding that insurer's position, however, the Court reached its decision as a matter of contract interpretation, while acknowledging that the same result would have been supported by the CUAA in that instance. *See* 2015 WL 4245821, at *2 n.3. *See also Summit Park*, 129 F. Supp. 3d at 1152 (noting that the Court in *Colorado Hospital Services* vacated the appraisal award "'as a matter of contract interpretation'"). I had no need squarely to face the question whether the CUAA governs appraisal awards in *Colorado Hospital Services*. I do in the present case.

I am also persuaded by another decision in *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, No. 14-CV-03417-LTB, 2016 WL 1321507, at *1 (D. Colo. Apr. 5, 2016), where Judge Babcock vacated an appraisal award on the grounds that an appraiser was biased. In that case, the appraisal provision of the insurance policy had no language authorizing an action to vacate an award. Hometown counters that the authority for such an action in that case was derived from Judge Babcock's order setting forth guidelines to govern the appraisal process, which explained the process by which a party could request to vacate an award. ECF No. 43 at 4–5. However, the fact that there were such guidelines in *Summit Park* does not imply that the absence of such guidelines in other cases is fatal to a party's attempt to vacate an appraisal

13

award. Moreover, in issuing his guidelines, Judge Babcock indicated that the policy provided the authority to vacate the award: "the policy requires the appraisers to be 'competent and impartial.' The guidelines below . . . will minimize the risk that the appraisal award will need to be vacated *pursuant to this language*." *Summit Park*, 129 F. Supp. 3d at 1155 (emphasis added).

Philadelphia also cites *Gold v. State Farm*, No. 10-CV-0825-RBJ-MJW, 2013 WL 1910515, at *5 (D. Colo. May 8, 2013), where the Court disqualified an appraiser under a substantially identical insurance policy that did not specifically authorize such action. Hometown rightfully points out that the issue of whether an appraisal award should be vacated was not before the Court in *Gold*, but that the issue instead was whether to disqualify certain appraisers. ECF No. 43 at 5. However, to the extent Philadelphia cites *Gold* in support of the proposition that a court may take action relative to an appraisal as a matter of contract interpretation without the insurance policy providing express authority to do so, Philadelphia's point is well taken and is consistent with this Court's assessment of the relevant case law in this district.

3. Sufficiency of Philadelphia's Allegations of Mr. Rockers' Partiality, Counts I and III.

The counterclaim does not allege, in so many words, that Mr. Rockers knew about HomeGuard's interest in the outcome but intentionally did not disclose that interest notwithstanding his reliance on HomeGuard's estimate. However, Philadelphia does allege that Mr. Rockers had a duty to disclose HomeGuard's interest, thus implying that he was aware of that interest, and that by "relying exclusively on a contractor with a material interest in the outcome of the appraisal, relying on a contractor that knowingly inflated the value of the damage at issue, and failing to disclose HomeGuard's interest in the outcome of the appraisal, Mr. Rockers failed to act as a competent and impartial appraiser." ECF No. 38 at 28-29, ¶¶22, 29.

For purposes of a Rule 12(b)(6) motion I construe the allegations of the counterclaim and reasonable inferences drawn from those allegations in Philadelphia's favor. Accordingly, I find that Philadelphia has implicitly alleged that Mr. Rockers was aware of the situation and intentionally chose not to disclose it to Philadelphia, Mr. Trusler or the umpire. If there is admissible evidence that supports those inferences, I conclude that they could establish that Mr. Rockers was not a competent and impartial appraiser.

One must be careful, however, to be aware of some fairly subtle distinctions between what Hometown appears to be alleging about Mr. Trusler and what Philadelphia appears to be alleging about Mr. Rockers. I have construed Hometown's allegations not to assert that Mr. Trusler is not a competent appraiser or that he was not impartial but instead to assert that he did inappropriate things after he was selected that delayed the process. As such, his conduct cannot be imputed to Philadelphia. I have construed Philadelphia's allegations to assert that Mr. Rockers was not impartial, i.e., that he did not act "fairly, without bias, and in good faith." If so, then there is no need to consider imputation of his conduct to Hometown, because the appraisal process did not work as agreed, and the award would be vacated. Because I find that Philadelphia has plausibly pled that Mr. Rockers was not impartial, I DENY Hometown's motion to dismiss Counts I and III of Philadelphia's counterclaim. Whether Philadelphia can back these allegations up with admissible evidence is an issue for another day.

    4. <u>Sufficiency of Philadelphia's Allegations of Fraud, Count IV</u>.

Philadelphia believes that Hometown's argument for dismissal of Count IV misunderstood the gist of the count. I too had difficulty trying to figure this count out. The problem might stem from Philadelphia's allegation, "As a result of [Hometown's] fraudulent misrepresentation and concealment, *by and through its appraiser, Chris Rockers, and its*

15

*contractor, HomeGuard,* Philadelphia sustained damages in the amount of the appraisal award." ECF No. 38 at 35, ¶59 (emphasis added). That is a bit mysterious when we learn, in Philadelphia's response to the motion, that it considers it to be "immaterial" whether HomeGuard was an agent of Hometown, and we know from Philadelphia's motion for reconsideration that it argues that its own appraiser's conduct should not be imputed to Philadelphia on an agency theory.

As I interpret the substance of Count IV, it begins, as did Counts I and III, with Hometown's agreement that HomeGuard would receive as the compensation for its repair work all of the proceeds of its insurance claim against Philadelphia. But whereas the focus of Counts I and III was on whether Mr. Rockers' reliance on HomeGuard's estimate in the circumstances meant that he was not a competent and impartial appraiser, the focus of Count IV is on Hometown's alleged concealment of its arrangement with HomeGuard from Philadelphia, Mr. Trusler and the umpire.

Hometown is a homeowner's association. Its interest is in getting the damage it attributes to the hailstorm repaired at little if any cost to itself and its member homeowners. There is nothing inherently wrong with hiring a contractor on the basis that the contractor will be paid by the proceeds of the insurance claim. From Hometown's point of view it probably makes good business sense.

However, the nature of the contractor's fee inherently created a motive to inflate the costs. This is not to say that HomeGuard necessarily did so. That is a disputed fact. But Philadelphia alleges that Mr. Rockers presented an estimate he obtained from HomeGuard in the amount of $540,089.82 to the appraisal panel. ECF No. 38 at 35, ¶53. That is the exact number that was awarded for repairs to roofs and exteriors, constituting nearly the entire appraisal award.

16

Construing Philadelphia's allegations in its favor for purposes of the motion to dismiss, I find that it is reasonable to infer that Hometown must have known that Mr. Rockers was presenting numbers obtained from HomeGuard to the appraisal panel.

As a matter of law I hold that if Hometown knew that HomeGuard's estimate of the value of the damage caused by the hailstorm was being presented to the appraisal panel, then it had a duty to disclose its contractual arrangement with HomeGuard to Philadelphia, Mr. Trusler and the umpire. It could make the disclosure directly. Or, it could ask Mr. Rockers (or even HomeGuard) to make that disclosure. It doesn't matter who makes the disclosure, but the duty to be sure that it is made lies with Hometown, the insured. Philadelphia alleges that neither Hometown nor Mr. Rockers disclosed the contractual arrangement to the umpire. ECF No. 38 at 21, ¶14.

Hometown suggests that Philadelphia did not rely on that omission. That is not necessarily correct. In a concealment case, reliance is established by showing that a party acted or did not act in reliance on the assumption that the concealed or nondisclosed fact did not exist. *See, e.g.*, CJI-Civ 19:2 at ¶5 (2017 ed.). One may justifiably assume that another will not intentionally fail to disclose a material fact that he has a duty to disclose. *See id.* at 19:9. If Philadelphia had been made aware that HomeGuard had a material interest in the outcome of the appraisal process that potentially could impact its estimate, it presumably could and would have brought that to the attention of its appraiser and, ultimately, the umpire.

I note that Philadelphia also alleges that HomeGuard was representing to the City of Arvada that the true value of the project was only $185,000 at the same time it was presenting a much larger number to Mr. Rockers for the appraisal panel. Those facts, if true, arguably show that HomeGuard was playing fast and loose with the facts. Hometown's speculation that "[t]he

17

value given to the City of Arvada could have been in an effort to reduce the cost of the permit," ECF No. 40 at 10, doesn't make it any better. But it seems to me that this is a bit of a red herring. The victim of those shenanigans would be the City, not Philadelphia. It appears that even Philadelphia recognizes that the value of the damage exceeded $185,000.

I also note that I am not suggesting that Mr. Rockers' knowledge or actions are imputed to Hometown. If he was a competent and impartial appraiser, then his acts are not imputed to Hometown. If he was not a competent and impartial appraiser, then the appraisal process broke down, and the award would be subject to vacation. But Count IV rises or falls according to what Hometown knew and did.

I conclude that Count IV plausibly states a claim for fraud by non-disclosure or concealment against Hometown. Accordingly, the motion to dismiss Count IV is DENIED.

## ORDER

For the reasons stated herein, defendant's motion for reconsideration is GRANTED in part and DENIED in part, and plaintiff's motion to dismiss defendant's/counter-plaintiff's counterclaims is DENIED. The motion for reconsideration is granted to the extent that the Court holds that Philadelphia's appraiser's alleged misconduct during the appraisal cannot be imputed to Philadelphia, and that plaintiff has not alleged facts that plausibly would permit Philadelphia's removal of the "appointment action" to serve as a basis for a bad faith claim.

DATED this 30th day of April, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge